Good morning. Good morning. My name is Omodari Jupiter. I'm a counsel for Appellant Burnell Aubrey Williams. I'd like to reserve three minutes for rebuttal. That'll be granted. May it please the court. The district court's error in denying the motion to dismiss this violation of Speedy Trial Act resulted in a deprivation of the very protections that the Speedy Trial Act was designed to ensure. Mr. Jupiter, let me start from the end and then we'll work to the beginning if you don't mind. What is it you want us to do? Your client's out of custody, right, and is under supervision right now? Yes, your honor. Tell us what you want us to do. We want you to remand it to the district court with instructions to dismiss based on Speedy Trial Act violations. We think that the court has a sufficient record at this point to not have to, and also for the reasons that the court just alluded to, that the court has sufficient evidence to direct the court to actually dismiss with prejudice based on the record before it. If the court does not feel that it has a sufficient record, then with regard to the last prong dismissal with or without prejudice, then we would ask the court to remand to the district court to find the Speedy Trial violations. Particularly, I'm going to argue with respect to two particular time exclusions that were not handled by the district court opinion. Now, just along the lines of what Judge Restrepo said, does the Supreme Court in Zedner tell us if we do agree with you that we should send it back to the district court to make the initial, to make the determination of the first instance, whether it's with or without prejudice? I think that that is, that would generally be the case. We have a somewhat of a unique situation here where you have a more advanced record with respect to, I guess, the factors that the court would need to consider with respect to whether or not dismissal with prejudice is granted. Those three factors, the motion to dismissal, the circumstances, the facts of the case or the seriousness of the case, as well as how this would affect this administration of the Speedy Trial Act. The last one being most on point here where someone pled guilty while they were awaiting a ruling for several months on a motion to dismiss and then got credit for time served as their sentence. I think the administration of the Speedy Trial Act in this particular instance, first of all, the seriousness of the case was addressed by this person who already has done his time and has already has a conviction on his record. So really what's at issue is whether he's got the ongoing stain of this conviction or whether that's released, right? That, as well as, yeah, as well as what, as well as the interest of the public has and the court has on the administration of the Speedy Trial Act, because it's really a public interest. It's not just related to Mr. Williams, but what type of message is it sending to the public in terms, as well as to the courts, in terms of administration of these types of delays? How much time does he have left on supervised release? Your Honor, that's one question I can't answer. I didn't calculate that. I would look at the date of, you know, obviously his supervised release would have started on the date of his conviction. Is this an endemic problem with some, I mean, this situation was obviously complicated by the mental health issues? Yes. Is this an endemic problem that you've perceived here with other clients, or is this a one-off case? I have, no, Your Honor, this is a problem we have in just about every case. I have one right now where my client actually was not transported before the, before the 30, initial 30-day period. I'm sorry, Mr. G, when you say every case, every case with a mental health issue or every case period? Every case with a mental health issue, Your Honor. I would, you know, It's because of backlog at Butner, or the remoteness of the Virgin Islands, or a combination, or can you identify? The first delay comes in, in terms of getting, for some reason, there seems to be a recurring problem with getting the order from this court, from the courthouse to the marshals. I don't know why that occurs, but that occurs over and over again, whereas the district, the clerk's office says, we sent them, we have the order, the marshal's office says we never got the order, and unless we know that that has occurred, nobody alerts, there's no, there was no alert that's happened in this case as to, and there's no explanation in this case as to why it happened. So would we need an evidentiary hearing to kind of flesh that out or not? No, we already had the evidentiary hearing, and the district court even asked the witness, well, did you inquire as to why there was a delay? And she said, yes, I inquired to the courtroom clerk as to why was the delay, and he said he'd get back on me, and it was left at that. The government didn't go any further in the record to find out, and the court didn't go, district court didn't go any further to find out, well, what did happen? I mean, this is court personnel, this is the marshal's office, all who are answerable to the government, all who are answerable to the public, and all who are answered to the district court. But obviously, they're not answerable to Mr. Williams, and that's who was deprived here, and that's the fatal part of this that is, which is why it impels the court at this point to grant a dismissal. What about the second bucket of delays? So when you say the second bucket of delays, I think you're talking about the delays related to the motion in Lemony. So we think that this court should adopt the approach that the D.C. Circuit has in several cases that indicate that there has to be a qualification for something to be a motion. Now, I don't want to give the court the impression that it has to do a speedy trial analysis every time a motion is filed, but we have enough evidence in this record to see that the district court did not consider this a motion that required a ruling or a motion that required a hearing. And I think under Henderson, as well as the D.C. Circuit cases, talk about... What about Latney, our case? I don't... Didn't we say in Latney at page 874 that we treat motions in Lemony as pretrial motions for Speedy Trial Act purposes? I don't... Yeah. Yes, Your Honor. And excuse me. I don't think that we... The issue was fleshed out in... And you have to excuse my memory for a second. In Latney, as to whether or not this would apply. It applies in motions in Lemony, but whether or not it would apply... Isn't this a motion in Lemony? No. Well, it's styled as a motion in Lemony, but it deals within a non-pre-trial issue. An issue that's not going to be resolved pre-trial because it wasn't an issue. We would say that it wasn't even in good faith, because the issue of competency had already been resolved. The defense never filed under Rule 12 any notice of mental insanity or anything like that. And you also have further evidence that you had this issue that had already arisen with respect to this delay in transportation before this happened. And the government is over here wary at this point as to whether or not the Speedy Trial Act clock is running. So how should we write that? I mean, what would it look like in terms of the timing? I think that in terms of the timing, the court would have to say, based on a number of factors, mostly coming from the district court, what the district court did after that motion, and did and did not do after that motion was filed. Well, they did nothing for many months and then asked for a response. Yeah. But even before that, Your Honor, after the motion was filed on after the government filed this motion on December 2nd, and the defense filed the motion to dismiss on December 18th, the district court had called for a hearing on the motion to dismiss. The district court called on the government, had the government respond to the defense's Sixth Amendment argument. The district court also then had the hearing and questioned the witness and had argument from counsel. Then the district court once again asked for another response with respect to a supplement that was filed. All of those things the district court did, the district court never raised anything about this motion in limine until 11 days after we took a writ of mandamus to this court. So what you're, did you go back to what you had said earlier? I guess for you, citing the Henderson case, it's a question of when did it go under advisement? Under the statute, right? With respect to the motion in limine? Yeah. No, it's a question of whether or not the motion, whether or not it qualifies as a motion that triggers the Speedy Trial Act at all. As I understand what you're saying, Mr. Jupiter, you concede that under latiny, a proper motion in limine tolls the Speedy Trial Act. Yes. You're saying you can't call this a motion in limine. It was mislabeled or... Yes, Your Honor. It shouldn't be given that, it shouldn't be treated as a motion in limine even though that's what it was called. At best, it was a note, perhaps it was a notice similar to the type of notices that were filed in the DC circuit cases that, hey, if this issue, we're going to be doing this at trial. I mean, it looks like a standard motion in limine. They were trying to preclude any evidence regarding competency, right? I mean, motions in limine are about evidentiary disputes, typically, aren't they? What can come in and what's going to come in and what isn't going to come in? Yeah. Evidence. And here they're saying we don't think any evidence regarding competency should come in. That seems like a garden variety motion in limine. Yeah. Well, not when the issue of competency is not even... The only way the issue of competency could be at play is if the defense had filed a notice. Well, I think they were being preemptive, right? I guess they were trying to preempt you from doing that. Under that circumstances, the government can always say, we're filing a motion in limine because we don't want... Well, and you can respond the next day saying, when the government files a motion saying no evidence regarding competency, you could file a response that says, no problem, judge, we're not putting competency at issue. And then the matter's closed and then the speedy... And then judge enters an order and the speedy trial clock begins to run again. And under the same line of cases that we rely on, we then run the risk that we are recognizing it as an emotion. And even if... So even the DC circuit remarked about that, is that when a motion gets dialed in this way, if the defense, and this was in the Harris case that they cited too, in both Taplet and Marshall, when the defense files a response, then the defense's response may therefore be considered a motion that would stop the speedy trial clock. Well, that's what I was getting at. Let's assume we don't agree with... Let's assume we do deem it to be a motion in limine. Then what's your argument? Well, you've still got 83 days, right? Yes, Your Honor. So you don't need to prevail on the motion elimination. No, we don't. We still have a violation. And I think when you go to the second problem, you consider the delays that occurred after that in terms of deciding whether or not this needs to be dismissed with prejudice. Okay. Thank you, counsel. Thank you. Good morning, Your Honors. Good morning. Every part of the United States. To begin with, Judge, this was the issue of the mental competence of the defendant. That is something that the defendant placed before the court right out of the gate when he was first appearing for his initial appearance. So the issue came out that the defendant may not be competent to proceed and that his attorney is the one who brought it first to the court's attention. And within a few days after that, the court ordered the defendant to be evaluated. Interestingly enough, even though the court ordered the evaluation, it would appear we came up to a hearing on April 14th, and the defense counsel for the first time informed the court that his client is refusing to participate in any evaluation. Mr. Potter, I'm not sure these facts really bear on the question of how many days of non-excludable time passed. And by my calculation, if we assume the motion in limine is a true motion in limine, you've still got 83 days of non-excludable time. How am I wrong on that? I think you've already conceded, I guess, 53 days, right? Yes, we conceded. So then the question is, are there 30 days of presumptively unreasonable travel delay? It's all about the travel delay, right? Yes, I guess we can start with that. Let's start with the last travel delay, the December 2014. The court had already determined that the defendant was incompetent to stand trial. That second delay, that second travel, he was being sent back to Butner for I think what they call a four-month period of study, or where they would be attempting now to make incompetent. Our position is, because he had been ruled incompetent, that period of time where he was now being transported back to Butner should be excluded for many speedy trial violations, for many speedy trial clack. And your authority for that is? The statute itself, 3161H4, and it says any period of delay resulting from the defendant being incompetent shall be excluded. He was in fact, at that point, the report had already come back from Butner, and I think it was October 31st, finding the defendant incompetent to stand trial. We asked your adversary about the travel issues here. Do you care to comment at all on that? We understand it's not you personally who is responsible for that, but do you care to be for competency evaluations? Sure. Generally, I would say only in this case, this case involving Williams, that would have been the first time, to my knowledge, that there had been an issue of transporting defendants for medical evaluation, competency evaluations. Now, that's not saying it doesn't happen, but we are in a unique situation here in the Virgin Islands. We rely on aircrafts to take prisoners from the territory to Butner or to wherever else the facility may be. Because your adversary seems to think it's a very frequent occurrence. Not to my knowledge, Judge. In this case, the delay in travel had more to do with a clerical issue in the clerk's office than with anything that the marshal service did not do in providing transportation. Once the marshal service received notice of the order requiring them to transport a defendant to Butner, I think only maybe three days may have expired. I think they got the order on the 9th of July. The defendant reached to Butner on the 28th or the 29th of July. So that period, we feel, I know the statute indicates that that period is presumptively held against the government. But our position is that is in a situation where the marshal service actually has knowledge. All right. I think that's an important point that helps us get to the nub of this problem. If I hear you, you're agreeing with my understanding that travel delays to a competency exam is presumptively non-excludable over 10 days. Yes. But you're saying, well, it wasn't malicious. It wasn't intentional. It was an honest mistake. Yes. All right. But where in the law can this court say that the statute passed by Congress granting defendants speedy trial rights, which go, as Mr. Jupiter said, not only for the benefit of the defendant, him or herself, but also for the benefit of the public. How can this court countermand those statutory timelines on grounds of honest mistake? It's not even an honest mistake. If the issue was that the marshal service had noticed, received the order from the court, and somehow once they received the order, they were negligent in getting the defendant. I guess what I'm challenging you on, Mr. Potter, is I don't think it matters whether it's the marshals, the clerk, the judge. That's the government. If you're the defendant, you're on one side of the V. Everyone else on the other side of the V. If you're the defendant, you don't care who on the other side of the V filed this up. You just know that you're sitting there rotting away with your speedy trial rights being violated. Well, I agree to some extent. I don't agree though that any reason for delay, so it's like delay per se. No matter what the reason is, if it's more than 10 days, we're coming down on the side of a violation. That goes to remedy though, I think, doesn't it? I mean, I think that goes to remedy, right? Is it dismissed with prejudice or without? Either way, this case has to go back, right? I may be willing to agree with that. First of all, we need to have a clear indication from the court it's reasoning. If we do remand it for the district court to determine whether with prejudice or without prejudice is appropriate, do we need to provide some guidance here? Is there a systemic, I think all three of us, I think, are concerned that to the extent there is a systemic problem here with mental health evaluations, we'd like to try to alleviate that systemic problem. Is there something that we can say or write on that or does the government need help from this court or from the district court to make sure this sort of thing doesn't happen in the future? I don't know that the problem is systemic, but I will say that given the facts of this case, obviously, there was an issue between the clerk's office and the marshal's office. So that is clearly an issue at the time. Are there other cases where that is the same issue, communication between the order to transport and the marshals receiving the order? I don't know any other case in this jurisdiction where that has occurred. Now the issue may be once the court, once the marshal's service receives an order, given the transportation issues, it may be difficult for them to begin that process within 10 days. I can see just given the nature of where we are. We can't change the statute. This is true. Would you like us to take the second circuit approach on this issue? Yeah, the second circuit, they have a different view. Why are the majority of circuits wrong? I wouldn't say that any circuit is wrong. It's a different view. Why would you disagree with, say, the sixth, first, and fifth circuits about the 10 days? Well, I think they come down on the side of a defendant, the side of the speech route. But I think we also have to look at the purpose, the purpose why Congress put that 10-day period in there. And it was to ensure that the marshal's service wasn't lax in the procedures in getting someone to treatment or to evaluation. I think I read where the marshals probably had a practice of pooling, pooling individuals to get on a specific flight. So they would take inmates from one jurisdiction, put them on a plane, and they would wait until they had a full plane, a full load to go. I think that's what the purpose of this 10-day period was, to say to the marshal's service, we aren't condoning that. Once you receive an order, you must act immediately to get this done. And I guess to go back to my argument, that's not what happened here, but I do understand that the court's position that we have the government on one side and we have the defense, the defendant on the other side. So in this case, if the court were to ignore or to determine that that 10-day is basically something that the government cannot get around, then we come down to the issue of whether the case should be dismissed with or without prejudice. And given the facts that occurred in this case, given the reason for any spiritual violation, the total, number one, the seriousness of the offense that the defendant... But he's already served the offense. Do you happen to know how much time he has left on supervised release? His supervised release has probably been completed. My recollection is that he may have gotten one year of supervised release. And I think his sentence was, if I'm not mistaken, in 2017, but I'm sure it's... So if he's finished supervised release, then really on remand, the only issue remains whether this crime is on his record or off his record, right? That's correct. That's correct. And given the seriousness of the offense, our position is that it should be on his record. The public needs to be aware. He needs to have a record showing... Can you speak to the seriousness of the offense? Because I remember thinking the the offense, I didn't dig into the factual details of how the offense was a particularly serious crime, right? The defendant was in a grocery store. He had a little confrontation with the manager or with the cashier. There was a little back and forth, knocking of some of the items off the counter. The defendant grabbed something and ran out of the store. The store owner ran behind. There were a few feet from a school. The defendant had a backpack. He had a gun in the backpack. He took the gun, aimed and fired at the store owner. He shot the store owner, I think, in his shoulder or in his chest. And his sentence was? He got time served, which amounted to about... Shooting someone gets you three years? Is that typical? I would say not, Judge, but given the nature of the proceedings at the time and given the posture of the case, the government entered into a plea agreement with the defendant. Oh, it was a C plea? Yes. Oh, okay. Yes. Is that because the government was concerned about the speedy trial? It was not a C plea, sorry. Was it because the government was concerned about these speedy trial issues? No. Oh, I think the issue... That's what I took you to mean by the posture of the case. And quite frankly, when I was trying to make sense of this sentence, which seemed really lenient for shooting somebody, I thought, well, maybe it was a bargain because they were afraid they were going to have the whole thing tossed out on speedy trial grounds. No, the government position was even if this court found a speedy trial violation, that they would remand and it would not be to dismiss without prejudice. So we had an affair of that angle. There were other issues involved that the trial was scheduled for the following day. And there may have been some logistical issues that the government was concerned with. And then given the entire totality of the circumstances in the case, the government entered into a plea. All right. Thank you. My time is up. Thank you. Okay. There are two things I really need to clarify very quickly. Number one, Mr. Williams, the offense of conviction was not for the offense that the government counsel just explained. Mr. Williams pled guilty to possessing a firearm when he was arrested five days after that offense. So this conviction that we're asking... So it was a felon in possession? It was a possession of a firearm within a thousand feet of the school when he was arrested. And that was five days after the incident, the alleged incident that the government just talked about. So that's not what he pled guilty to. That's not the offense of conviction here. Government never proved that with regard to the events that occurred on December 24th. This was December 29th. The other thing the government made, started off talking about, this was post-finding. This travel delay occurred after there was a finding of incompetency, which in that case, H4 would apply, dealing with when the defendant is incompetent. But H1 and the subparts that follow relate to proceedings. The initial 31 days of delay in this case that followed his arraignment, or 38 if you take our other argument, but 31, which is more than enough, related to before there was a finding of incompetency. It was after the government moved for incompetency. So that relates to the H1 subparts, where delay is therefore, the presumption of a 10 day, over 10 days delay, being unreasonable, applies. So that's why the government's citing, and they didn't even argue it today, they're citing to Romero and other cases, as well as even some of the other cases, wouldn't apply. The H, the travel delay doesn't apply after there's been a finding of incompetency. But this delay we're talking about, the initial 31 days, that was before. That was for the initial finding of incompetency. Let me ask you, we had discussed during your initial argument about the frequency of travel problems. Your adversary, anecdotally had, I guess it's both anecdotal, but had a somewhat different view. Is there anything in the record about this? There's nothing in the record about it. About the general problem. Well, the defense raised the issue in its pleadings. So the district court or the government could have responded to it at that time. The district court chose not to go into whether or not this was, go any further, even though the defense cited two specific cases out of this district where this has occurred. And when I say it has occurred, it doesn't necessarily, it'll occur to the extent that it's over the 10-day delay, the simple movement of the order from the clerk's office to the marshal's office, the problem with designation, the problem with the marshal's... Where can we find that exactly? You say you listed cases. Where can we find that? We listed, it was in the, it was at least in the motion to dismiss, the first motion to dismiss, as well as the second, I believe in the second motion to dismiss as well. Do you cite individual cases? We cited individual cases out of this district where there were delays, yeah, there were travel delays. But, you know, you can look at the record just in this case, and even after the problem was brought forward, there still were travel delays that were basically just, even though they don't count for speedy trial purposes, they explain how this problem occurs. They illustrate how this problem occurs. So for that reason, we think that the even the ones that were done after the finding of incompetency, while they don't affect the Speedy Trial Act, they give this court enough evidence to show that this is a systemic problem, because it occurs at every step of the way. And for that reason, this court should remand to the district court with directions to dismiss this with prejudice. Thank you. Thank you, counsel. We'll take the case under advisement, and we thank counsel for excellent briefing and argument.